on behalf of Mr. Johnson, Ms. Linda G. Palacio, on behalf of the athletes, the people, Ms. Stephanie H. Schley. Good afternoon, Council. Ms. Palacio? May it please the Court. My name is Grace Palacio, and I represent the defendant, Stephawn Johnson. Johnson's opening brief raised two issues. For the purposes of this oral argument, I will focus my discussion on Argument 1, the improper admission of other crimes evidence. Unless this Court has any questions with regards to Johnson's other arguments, the defendant will stand on his opening and reply briefs on that matter. I will reserve three minutes for rebuttal. The issue before this Court is whether the trial court erred in allowing the State into introducing other crimes evidence that Johnson had a prior conviction for robbery and testimony that he told the complainant that he had just got out of jail. But, Counsel, that conviction was admitted only after the trial court ascertained that it met the Montgomery criteria and, as well, conducted a balancing test. Isn't that correct? It is correct. We maintain that even conducting the balancing test and looking at the evidence as a whole, it ultimately was an abuse of discretion because the prejudicial effect outweighed its probative value. And the probative value had to do with the fact that it was, in fact, a he said, she said situation. The credibility of the witness and the defendant was at stake. Isn't that correct? Correct. And so why wouldn't the prior conviction since the defendant testified be probative or more probative than prejudicial? I think if you look at this case and the facts of this case, like you said, what you have is a he said, she said. And what Johnson presented was a consent defense. So this ultimately – I'm sorry. Johnson presented was a – A consent defense. An affirmative defense of consent. Consent defense. I'm sorry. Okay. Yes. So what you have is you have these two different stories. He said, she said. You have her version. You have his version. And when you start off by already knowing that he's going to present his consent defense and you have this strike against him, it's already told to the jury that he is a convicted felon, automatically, inherently, we have these biases that tell a jury that, you know, maybe we just shouldn't believe this person. And then when we get to the facts of this case, when you look – Isn't that the whole point of Montgomery? It is. It is. I mean, isn't that the law? Absolutely. And it is probative of credibility. It is probative, but there is a balancing of whether the probative value, which I don't deny there is a probative value, whether that is outweighed by the prejudicial effect. And I think if you look at the case and the evidence that was presented, the testimony, the story that was presented, you have A.R. who has this story of she goes out one night, there's shrinking, there's shrugs, there's hanging out, and she says she wakes up and she finds the defendant and a friend of his committing sexual acts against her. And then you have the defendant's version of the story, which is entirely consistent with both the physical evidence and with human nature saying that, you know, we hung out, and then at some point some people left. But A.R. and I, we got along, we hit it off, and in the morning while we were talking, we decided to have consensual sex. It seems like you're arguing that the more closely balanced the evidence is, then the more this shouldn't be allowed in, the more prejudicial it is. I mean, the more credibility is at issue in a case, then the more the court should not allow this type of testimony or this type of evidence. In some respects, yes. But I think in this case in particular, if you look at all the problems with credibility were all on the side of the complainant. She was the one who had problems in her testimony. There was nothing about it. The physical evidence didn't add up. Even some of it defied human nature in the sense that, you know, she says she wakes up, this is happening to her, then she goes back to sleep, and then when she wakes up, she asks the defendant, can you help me find my phone, can you give me a ride home. Well, all those details are to be weighed by the fact finder, is that correct? Right. Right. But here, this robbery conviction was very different than the charge which the defendant faced, isn't that correct? Yes. And the trial court did not allow any details with respect to the conviction. It was bare bones, defendant testified, and then a certified copy was admitted after that. And then the trial court also admonished the jury about how they were to view this prior conviction. And so under those circumstances, I guess it's hard to see where the prejudice would outweigh the probative value. And, again, as Justice Burke just talked about, beyond saying that where you have a close credibility question, a prior conviction that meets Montgomery shouldn't be, Montgomery criteria shouldn't be allowed. Yes. That is the danger of the balancing test. But I think if we do the balancing test in this case, we have to see if the prejudice, in this case there was clear prejudice, outweighed the probative value. And in terms of when you have a he said, she said, you have one person's version of events versus another, and the complainant's version of events is the one that is problematic. The jury outright rejected significant portions of it. They acquitted him of four of the counts, ultimately only convicting on the two. And the question before this Court is, would that have occurred had this other crime's evidence not been admitted at trial? What parts of the defendant's testimony was incredible? What parts of it was not believable? And then you have A.R.'s testimony, which, you know, given the circumstances, is all over the place and is not supported by the physical evidence. It is not supported by human nature. And so what we have is you have the danger that we all have, the concern we all have about other crimes' evidence. Does hearing that someone is a felon, does hearing that someone has committed bad acts in the past so prejudice a jury against someone that they believe that this defendant might just be a bad person deserving of punishment? Maybe this defendant has a propensity to commit crimes. Even if the evidence was not proven, these acts were not proven beyond a reasonable doubt, which I don't think we can say was really done here. If you look at the evidence as a whole, what was the danger? What was the prejudice of this other crime's evidence? We knew going in that this was going to be a he said, she said. It was a consent case. Are you not conflating other crime's evidence with impeachment evidence? I mean, it seems like you're putting it all together. No, I'm not. And so maybe there can be an overlap. But in this case, just the fact of telling the jury that he has a conviction for robbery, and in the case that is very much just one version of events versus another version of events, there is a bias, there is a prejudice that we have always been concerned about, and this is why we have a balancing test for other crimes. What fault do you find in the court's balancing analysis? Where did the court go wrong? I don't know that you can pinpoint because the balancing analysis is not done on the record. But I think if you ultimately look at what was presented at trial, ultimately having the statement come in, having the certified conviction, and then so you have the jury wondering what was he in jail for, and then you have them at the end of evidence being told, well, he was in for robbery. And then you get the jury instruction saying, you can consider this robbery for his believability. Even if there was nothing wrong with his believability up until that point, then you see that ultimately deciding to let this evidence in resulted in an abuse of discretion that prejudiced the defendant such that he deserves a new trial. Well, the balancing actually did take place on the record. And the court said, I think it's true that any conviction, any criminal history can be prejudicial. So the Court's recognizing that this is prejudicial. But in this case, balancing all the factors, given its recency, which it was a fairly recent conviction, and also taking into account the theft element of robbery, the Court felt that should the defendant choose to testify, his credibility would be at issue. And, again, I think the balancing took place right on the record, page 13 of the transcript. Yes, that balancing test did occur. But I think if we ultimately look at what occurred at trial and how not even close the testimony was, I don't think there were any problems or inconsistencies in Johnson's testimony. And then you have the problem in A.R.'s testimony, that balancing test, while at the time seemed okay when it happened, ultimately proved to be an abuse of power. And then in the case of Johnson, in which case, as I said, the judge ended up saying this, ended up being so great against Johnson that we can't be sure that the jury did not return guilty verdicts on at least some of the charges just because they believed that it was an abuse of power. Should a trial court wait to hear in the victim's testimony to see whether it's an impeachment in it or whether it's credible in the trial court's view before it rules on something like this? I mean, it seems like we're Monday morning quarterbacking. You're not taking a whole lot of issue with the court's balancing as it took place before trial. But then in light of what happened at trial, we're going to Monday morning quarterback the trial court and say there was an abuse of discretion. I don't think we can make a black letter or just general rule saying that that is what a court needs to do. But I think if you look at this case, these facts, the results, what ended up happening, how the jury wanted to specifically see the testimonies of both of these people, clearly rejected major portions of the complainant's testimony. Ultimately, we see that there was prejudice, that something about maybe those convictions or maybe that fact that was brought forward against the defendant who otherwise presented a perfectly reasonable and logical version of events, that this ultimately became an abuse of discretion because otherwise we just cannot be sure that this jury, you know, as humans, just felt like maybe there was this bias. Maybe he has a propensity. Maybe he's a bad person. And we don't really know what happened. But we know that the complainant's version doesn't make a lot of sense. We're rejecting major portions of it. But there is something, something wrong that is nagging at us. And maybe we can come back with convictions on some of these offenses. And maybe it's okay because we know that he is a felon. We know that he commits crimes. And that is the inherent danger. That is what we are concerned about. And ultimately, it became an abuse of discretion when the judge allowed this evidence in that trial. Was there anything tying the robbery conviction to the getting out of jail statement? No. Nothing specific other than him maybe saying, just got out. But I think if you're a jury, you know, when he says, just got out, that's just kind of hanging in the air. And you're wondering, what did he get out for? What did he do? That question gets answered with the robbery. And so that's something that, you know, maybe the jury was thinking about it earlier. But it comes back at the end. So your position is they just made that assumption because there was nothing that necessarily connected his recent departure from jail and the robbery conviction. I can't say what they assumed. But to me, I think human nature would suggest that, you know, if he said he just got out of jail and then later told there was a robbery, you're going to presume they're one and the same. With regard to the excessive sentence argument, you argued that the defendant's youth wasn't adequately taken into account. And yet the trial court clarified that it did take the defendant's youth into account. The cases that I think are discussed really have to do with defendants who had de facto life sentences and actually were quite a bit younger. Why should we be looking to those cases to inform a decision here when the defendant was not within that range range, did not have a de facto life sentence imposed, and no PSI in the record, and was sentenced in mid-range? The only argument I was making in that respect was that when the judge initially sentenced the defendant, she said that she would not consider his youth, which his counsel had argued was something to be considered as a mitigating factor. And she said, you know, I recognize that there is this case law, but it doesn't apply to him because he technically is not a juvenile. And then upon further reflection and looking at the case law, recognizing that, you know what, some of this science talking about juvenile minds and maturity, courts have recognized that that does apply to emerging adults. And so when I said before that mitigate, that's not a mitigating factor because he technically was not an adult, I recognize now that it was. And the only argument I was making is that upon recognizing that it is a mitigating factor as recognized by other courts, even for emerging adults in terms of considering just youthfulness and mitigation and maturity, that because the court did not consider it before because she did not think she was supposed to, and then considered it later, that is just evidence that maybe she did not consider a youth in mitigation at all. Under these circumstances, the prejudicial other crimes evidence may have tipped the scales against Johnson. We ask that this court reverse his convictions and remand for a new trial. Thank you. Ms. Lee. I have case in court. Stephanie Lee for the state. I would first like to, I would like your honors to actually separate the, what is being called just other crimes evidence. The first issue was the robbery and it was solely used for impeachment. And the jury was in fact instructed to that effect. It was a crime of dishonesty. It was a crime. It was a felony. It falls squarely in with Montgomery and the rules of evidence. And in fact, if it becomes a close credibility contest, the state has absolutely every right to impeach the defendant. Once he takes the stand, it has to be ruled on before trial, which it was. And so the defendant taking the stand knew that that would come in and can weigh that in his decision. To say that because it's a credibility contest, we don't get to impeach the defendant. It would be outrageous because the defendants is testifying as any other witnesses. And in terms of the balancing test, it's not just that it outweighs the prejudice. It has to substantially outweigh the prejudice. And especially in this case where you have all the state says we're admitting an exhibit. It shows a conviction for robbery. And we're using it as rebuttal. And that was it. And then it wasn't even mentioned again. You know, the court did instruct that it could go solely to the believability. I also think the fact that it's a robbery actually takes away from the fact of using it towards propensity because these are sexual offenses, not robbery. And so that actually makes it less prejudicial in that sense to the defendant. The other thing as to AR's credibility, she also testified about some things she had done, bringing marijuana to the party, things like that. Her credibility is being assessed as well. I assume if she had had a conviction that would have been used to impeach her as well. It didn't come up in that way. There was though evidence to support her credibility. There was, first of all, the nurse had testified about abrasions on the vagina that she had had. And so there was in fact some evidence to that effect. I don't think that we can speculate exactly what the jury was assuming. I think they were following the evidence when they decided which convictions to impose, which ones to find guilty and not guilty. Partly I would imagine the medical evidence helped play into that because there was some of these abrasions in the vaginal area. And the other, the victim, she testified very clearly. She was pretty honest about, well, he tried to get it here. He tried to put it in my mouth, things like that. It wasn't successful. So I think she came across in that sense very honest. And those are some of the convictions that became acquittal, that did not become convictions. They were charges that became acquittal. But we can't really know what went on in the jury's mind. That would be pure speculation anyway. As to the statement of why, because I just got out of jail, I think that was used differently than the robbery. It was used as somewhat of an admission. It didn't come in that way. It came in as motive and intent and knowledge. And I think that's perfectly appropriate. It didn't become a mini trial. It didn't become overemphasized. It was something that also AR would not have known that he had been in, I mean, she just met him. So the fact that she said, well, he said he just got out of jail, actually does support, it's very relevant to whether or not her story is credible, because how else would she know that fact? When credibility is primarily an issue, and you're assessing a prejudice, does it make sense that the closer the credibility contest, the more prejudicial a prior conviction would be? Only to the extent, I mean, unless you're going to make that rule for the witnesses as well. I mean, part of it, when credibility becomes an issue, that's exactly why we get to impeach. You'd be saying you could. Well, when we're talking about a defendant, it's a different analysis, because the witness is not trial. But, I mean, it's really, if we're talking about whether a, and I don't want to conflate other crimes of this either, but when we talk about whether a conviction would show propensity to commit a criminal offense. Well, I don't think a robbery in itself would show propensity to sexual offense, but I do think that the jury has a right to weigh the dishonesty and that it's not substantially outweighed by that prejudice, because, especially when it's not overly emphasized. So on one hand, it would be perhaps more prejudicial, but on the other hand, it would be perhaps more probative. I don't think, well, maximum prejudicial might be more if you said, you know, last week he was out committing another sex offense. That's probably much more maximum prejudice. But even that, I mean, I think if the defendant testifies, we can cross-examine him. Are we going to take that away too? I mean, when he does get on the stand, he puts his own credibility in issue. The rules are that he has to know ahead of time whether or not this will be admissible, and that, in fact, was done, so that he can take that into account. But to say that somehow because credibility is this important thing, only the victim or the witnesses can be impeached and we can't impeach the defendant, that, first of all, that goes against really the main stay of the law, which is that if the defendant takes the stand, you judge his credibility as you do any other witness. And so we would be taking that away, essentially, by saying that he can't be impeached. As far as, I don't know if anybody had any more questions about the why it wasn't addressed completely, but I do think it was an important admission by the defendant saying, this is why I did this, I just got out of jail. But, again, it really wasn't completely overemphasized in the trial. It was mentioned, I believe, just in the rebuttal argument, and it only came out once through the victim briefly. Was that admitted as other crimes evidenced, an intent motive, an absence of mistake? That, yeah, the why, because I just got out of jail, was admitted as intent motive and absence of mistake. Because the victim at the end said, well, after he finished, I said why, and he said because I just got out of jail. And that was giving an explanation and a motive for his actions. Well, it would give a motive for his actions, but is it truly other crimes evidence? You know, that's an interesting question, because under, it's not, getting out of jail, obviously, in and of itself is not a crime. It implies that you did something to get there. But it's not in and of itself a crime or even a bad act. Actually, getting out of jail, I suppose, is a good act. But you, you know, so I don't even know that you go through that analysis. I do know, obviously, either way, you're going to look at whether this is substantially more prejudicial than probative. But I think in this case, it was extremely probative. And given the way it came out and how it was worked in, I don't think it was substantially prejudicial or more prejudicial in that sense, or substantially prejudicial than probative. If I could just address the second issue, too. The sentencing? Yes, the sentencing. I guess I had a question with respect to the sentencing. When the trial court at first said it wasn't going to take youth into account, but then on the motion to reconsider the sentence said that it had, but did not reduce the defendant's sentence at all, how can we be sure that, in fact, the trial court did in any meaningful way take that into account? Well, the first thing is, if you look at page 860 of the record, it says, during the original sentence, it said, I agree you are a very young man. So he did say that. Once in Illinois, a person turns 18, the immature brain development, although it's science and evidence based, it's not an argument recognized under Illinois law at this point. Had you been a minor at the time of this offense, then that would have been a legal basis. The thing is, is that the Miller line of cases is essentially, they all apply to under 18, until you get to like an outlier like House, which said it could come in under the Illinois Constitution as Proportionate. Proportionate. Well, as like not considering the rehabilitative potential of this. But it has to be very fact specific, and it has to be as applied. What's happening now is they're trying to elevate this essentially constitutional argument into an abusive discretion standard for a 21-year-old who got an 11-year sentence, which is not even servable at 100%. And I don't think that any of the cases support that. And even if you look at the newer statute, I didn't cite it in the brief, but it's come up more recently, the statute in terms of these life sentences where they have to review them for parole after 20 years. So 11, we're not even close. The other thing is if you look at this man's history, he was in fact on probation at the time. He had been out of jail for three weeks at the time he committed this. He then also committed other offenses which were pending out of Kendall County, which the court would have been aware. But most importantly, I think as to argument two, there was a PSI that was talked about in the record. It is not in the record. And so I don't think that you can fairly consider any of the arguments as to sentencing when the record of the PSI is not before you. And I do think, you know, again, what he said, sorry, she said, the judge said at the reconsideration motion was that she would correct the outline. Once an individual in Illinois turns 18, immature brain development is not an argument recognized under Illinois laws, what she thought she first said from her notes. And she said that's inaccurate. It is a factor in mitigation, not for the statute. And the thing is, yes, in a sense, we always consider the character, the age, the nature, the circumstances of the defendant in sentencing. But age per se for a 21-year-old is not a statutory mitigating factor in and of itself. And I don't believe until you get into that constitutional argument, which is not what's being made here and is not supported by the record, you're not at the point where we're talking about a de facto life. I don't know that it even, these cases don't support a 21-year-old with an 11-year sentence being looked at specifically for their age. I don't think. Unless anyone has other questions. Thank you. Ms. Palazzo. Hi. Just a few quick points. When the state mentions that the complainant asked why, and the defendant said, because I just got out of jail, how could he have known this unless he hadn't specifically asked this question of him? I think both parties were very clear that what was happening that night was everyone was hanging out together and just chatting and talking. So that could have been something that the complainant had heard at any point that evening. It doesn't necessarily have to have come up in that context. And I think the rest of her testimony shows a lot of inconsistencies that makes it so parts of her testimony, frankly, were hard to believe. She said that Jacob Hartman didn't tell her he was leaving. But she also told the detective that, yes, he did. And she told Jacob that she'd be fine and she was planning on staying over. She said that the friend on the couch was also sexually assaulting her. And the evidence, the physical evidence, just did not corroborate that. So there are a lot of things that impeach this complainant's testimony that makes it so some of her testimony is hard to believe. And the jury could have chosen not to believe it just because the rest of her testimony didn't make sense. And then we get back to the prejudice of the other crime's evidence. And a robbery, while not the same as a sexual assault, that combined with the statement that I just got in jail, maybe that tells a jury this guy's just on his crime spree. Maybe he's getting worse. Maybe he has propensity. The fact that a robbery is not another sexual assault doesn't mean that it's also not incredibly prejudicial. So all in all, I think if you look at the evidence, if you look at the two versions that were presented to the jury, and then we look at the prejudice of this other crime's evidence, I don't think you can say confidently that it did not have an overly prejudicial effect on the defendant and might have ultimately resulted in guilty convictions the jury otherwise might not have found. Thank you. Thank you very much. Thank you, counsel, for your arguments this afternoon. The Court will take the matter under advisement and render a decision in due course. The Court stands at recess briefly until the next hearing.